UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

WALDO CLYDE JONES, JR., and
ATLANTIC CAPITAL COMPANY,
LLC,

           Plaintiff,

v.

CUSTOM TRUCK & EQUIPMENT, LLC,

           Defendant.

Action No. 3:10−CV−611

MEMORANDUM OPINION

This matter comes before the Court on Custom Truck & Equipment, LLC's ("CTE") Motion to Dismiss Count I for Failure to State a Claim (Docket No. 21) and Motion to Dismiss or Transfer Counts III, IV, and V for Improper Venue (Docket No. 23). The Court GRANTS the Motion to Dismiss and DISMISSES Count I. The Court further DENIES the Motion to Transfer pursuant to 28 U.S.C. § 1406(a) but nonetheless TRANSFERS this case to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a).

I. Statement of the Case

This case concerns the alleged breach of three separate but related contracts. Atlantic Capital Company, LLC ("ACC") is in the business of owning and leasing real estate; Waldo Clyde Jones, Jr. ("Jones"), serves as ACC's president. (Am. Compl. ¶ 2.) On April 15, 2010, Jones and ACC entered into three contracts with CTE, through which CTE aimed to establish an

1

operation for the sale of cranes in this region. First, CTE purchased assets from Jones, his wife, and a company affiliated with ACC in an Asset Purchase Agreement. Second, ACC leased real estate in Ashland, Virginia, to CTE in a Lease Agreement. Third, ACC entered into a Consulting Agreement with CTE. (*Id.* ¶ 6.)

Under the Consulting Agreement, CTE retained ACC as a consultant. (*Id* Ex. 2 ¶ 7.) In turn, ACC employed Jones to perform consulting services on ACC's behalf, requiring him to "devote substantially all of his business time to provid[ing] . . . consulting services[.]" (*Id.* Ex. 2 ¶ 1.) His duties included facilitating the transition of business from ACC to CTE, assisting CTE with locating and selling cranes and heavy equipment, assisting CTE salespersons with selling cranes, and performing "such other reasonable and appropriate consulting services as may be from time to time requested" by CTE. (*Id.*) The Consulting Agreement provided that CTE would pay ACC $10,300 per month for one year of consulting services, and that CTE would pay ACC and Jones additional commissions for completing crane sales. (*Id.* Ex. 2 ¶ 4.) The Consulting Agreement provided for termination upon Jones's death, by mutual written agreement of the parties, or for cause. (*Id.* Ex. 2 ¶ 14.)

Under the Lease Agreement, ACC leased CTE commercial real estate in Ashland, Virginia, for a two-year term. The Lease Agreement called for CTE to make monthly payments of $6,500 for the office. (*Id.* ¶ 10.) CTE began operating from the office on April 15, 2010. (*Id.* ¶ 11.) Jones claims he paid for many of "CTE's branch operational expenses, which were unrelated to Mr. Jones'[s] consulting duties," on his own credit card. (*Id.* ¶ 13.) These "operational expenses" included "fuel charges, insurance, airfare, postage, business lunches, office supplies and other miscellaneous business expenses[.]" (*Id.*) Jones submitted

documentation supporting these expenses with the expectation that CTE would reimburse him. (*Id.*) Jones and ACC allege CTE has so far failed to do so.

On July 22, 2010, Fred Ross, CTE's president, notified Jones that CTE planned to terminate the Consulting Agreement. (*Id.* ¶ 16.) When Jones inquired about the reason for the termination one week later, Ross asserted Jones had breached the Consulting Agreement because Jones had failed to sell equipment the Agreement required him to sell in a certain period. (*Id.* ¶ 17.) According to Jones and ACC, the Consulting Agreement contained no such requirement. (*Id.*) CTE allegedly fired its other Ashland employees in the following months. (*Id.* ¶ 18.)

During their July 29 conversation, Ross allegedly promised Jones that CTE would honor the Lease Agreement "unless we get crossways." (*Id.* ¶ 27.) When Jones asked Ross to explain the statement, Ross stated that he would not honor the Lease Agreement if Jones demanded payment under the Consulting Agreement. (*Id.*) After CTE purportedly terminated the Consulting Agreement, CTE continued to honor the Lease Agreement for a time. According to Jones and ACC, CTE completely halted payments on the Lease Agreement by September 2009. (*Id.* ¶¶ 20-23.)

Jones and ACC assert claims for relief flowing from CTE's purported breach of the Lease Agreement. They also claim CTE breached the Consulting Agreement, entitling them to the balance of monthly payments, unpaid commissions from crane sales, and other benefits provided by the agreement. Jones and ACC also claim CTE breached oral and implied contracts by failing to reimburse Jones for several expenses relating to branch operations.

The Consulting and Lease Agreements each contain forum selection clauses. The Lease Agreement states that "[t]he parties irrevocably submit to the . . . venue of . . . the United States

3

District Court for the Eastern District of Virginia, Richmond Division, in any action or proceeding arising out of, or relating to, this Lease." (Am. Compl. Ex. 1 ¶ 2.7.) For its part, the Consulting Agreement states "[e]ach party irrevocably and unconditionally submits to the exclusive jurisdiction and venue of any state and federal court located in Jackson County, Missouri." (*Id.* Ex. 2 ¶ 19.)

II. Applicable Law

CTE moves to dismiss Count I, which alleges an anticipatory breach of the Lease Agreement, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6) (2009). A motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. Fed R. Civ. P. 12(b)(6)(2009); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Thus, in deciding a Rule 12(b)(6) motion, a court must accept all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007), as well as provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and view those facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

Even though a motion to dismiss challenges only the legal sufficiency of a claim, Rule 8(a)(2) requires a plaintiff to allege facts that show that its claim is plausible. Fed. R. Civ. P. 8(a)(2) (2007); *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007). A complaint must contain factual allegations sufficient to apprise a defendant of "notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 1964. The Court may dismiss a claim that fails to state facts supporting each element of the claim. *Iodice v. United States*, 289 F.3d 270, 281 (4th

4

Cir. 2002). Furthermore, the court need not accept legal conclusions couched as factual allegations, *Id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

CTE also moves to dismiss Counts III, IV, and V, each relating to the Consulting Agreement, on the ground that this Court is not a proper venue for these claims. *See* Fed. R. Civ. P. 12(b)(3) (2009). In reviewing a motion to dismiss under Rule 12(b)(3), the Court may consider evidence outside the pleadings. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). The Court must draw all inferences in favor of the plaintiff. *Sun Dun, Inc. of Wash. v. Coca-Cola Co.*, 740 F. Supp. 381, 385 (D.Md. 1990) (citation omitted).

III. <u>Jones and ACC fail to state a claim for anticipatory breach.</u>

In Count I, Jones and ACC claim CTE anticipatorily breached the Lease Agreement. A party to a contract may seek an immediate remedy for breach when the opposing party signals "an absolute and unequivocal refusal to perform" the terms of the contract "in any event or at any time." *Dingley v. Oler*, 117 U.S. 490, 502 (1886); *City of Fairfax, Va. v. Washington Metro. Area Transit Auth.*, 582 F.2d 1321, 1326 (4th Cir. 1978). The repudiating party need not signal his refusal to perform verbally; any conduct communicating an "unconditional and total" repudiation will support an action for breach. *City of Fairfax*, 582 F.2d at 1327. *See Bd. of Supervisors of Fairfax County v. Ecology One, Inc.*, 245 S.E.2d 425, 428 (Va. 1978) (requiring for an anticipatory breach "acts and conduct of the obligor evinc[ing] an intent wholly inconsistent with the intention to perform its contract").

5

The requirement of an absolute and unequivocal refusal to perform is applied with "strictness," such that a conditional statement is not considered sufficiently unequivocal to support an anticipatory breach. *Id. See Dingley*, 117 U.S. at 502 (holding a statement was not an anticipatory breach where a vendor refused to ship ice unless the market price increased); *Frank F. Pels Co. v. Saxony Spinning Co.*, 287 F. 282, 289 (4th Cir. 1923) (holding a statement was not an anticipatory breach where a vendor refused to ship yarn unless the buyer satisfied the vendor "beyond any question of a doubt" that the buyer would receive the yarn).

Ross did not repudiate the Lease Agreement. By its terms, Ross's stated intention to dishonor the Lease Agreement if Jones asserted his rights under the Consulting Agreement was equivocal. The statement was not "an absolute and unequivocal refusal to perform," but rather a threat not to perform. *City of Fairfax*, 582 F.2d at 1326. Jones and ACC imply that the condition Ross required of Jones—the surrender of his rights under another contract— transformed Ross's statement into an unequivocal repudiation of the Lease Agreement. It did not. Proposing some illicit purpose in exchange for fulfilling the terms of a contract may give rise to another cause of action, but it does not transform an equivocal statement into an unequivocal one.

IV. Counts III, IV, and V: Venue

CTE also seeks dismissal or transfer of Counts III, IV, and V, pursuant to 28 U.S.C. § 1406(a). In Count III, Jones and ACC claim CTE breached the Consulting Agreement. In Counts IV and V, Jones and ACC claim CTE breached oral and implied contracts relating to operational expenses that Jones paid before CTE terminated the Consulting Agreement.

6

A. *Applicable Law*

Venue is proper in a diversity action in a district "in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(a) (2002). Under § 1406(a), a court hearing a case "laying venue in the wrong . . . district" may dismiss the case or transfer it to a proper district "in the interest of justice." Similarly, under 28 U.S.C. § 1404(a), a court may transfer a case "[f]or the convenience of the parties and witnesses, in the interest of justice." *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (holding that § 1404(a) governs a party's transfer request based on a forum selection clause).

The Consulting and Lease Agreements contain conflicting forum selection clauses. In federal court, a forum selection clause is prima facie enforceable, requiring the party resisting its application to prove it unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Federal courts construing conflicting forum selection clauses governing separate claims raised in a single action often decline to enforce both clauses out of concern for wasting judicial and party resources. *See Buffet Crampon S.A.S. v. Schreiber & Keilwerth, Musikinstrumente GMBH*, 2009 WL 3675807, slip op. at *8 (Nov. 2, 2009); *Freedom Mortgage Corp. v. Irwin Fin. Corp.*, 2009 WL 763899 at *4-5 (D. Del. March 23, 2009). These courts have concluded enforcement of both clauses is unreasonable under the circumstances, owing to the inefficiency that arises from splitting the action into multiple proceedings. *See B&O Mfg., Inc. v. Home Depot U.S.A., Inc.*, 2007 WL 3232276 at *3 (N.D. Cal. Nov. 1, 2007). These courts undertake fact-intensive analyses to determine which forum selection clause should be enforced. *See Freedom Mortgage Corp.*, 2009 WL 763899 at *4-5 (declining to enforce one clause where defendant previously filed an action in the forum provided in the second clause).

The conflicting clauses raise a unique problem, because the Consulting Agreement's clause assigns a mandatory venue, while the Lease Agreement's clause assigns a permitted venue. A mandatory forum selection clause requires a plaintiff to sue in the designated forum, while a permissive clause authorizes, but does not require, the plaintiff to sue in that district. *Bank v. Advanced Sys. Servs., Corp.*, 2009 WL 855730 slip op. at *3 (E.D. Va. Mar. 30, 2009). In order for a forum selection clause to qualify as mandatory, the contractual language must exclude jurisdictions outside the stated forum. *Intracomm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007). By contrast, a permissive forum selection clause simply confers venue and jurisdiction on a forum. *Id.* If a court determines a clause is permissive, venue is proper, but not required, in that court. *Unistaff, Inc. v. Koosharem, Corp.*, 667 F.Supp.2d 616, 620. (E.D. Va. 2009).

The parties also disagree about whether Counts IV and V arise under the Consulting Agreement. Regardless of their sources, venue may be proper with respect to those claims alongside either the Lease Agreement claim or the Consulting Agreement claim, under the doctrine of pendent venue. Where venue is proper with respect to one claim, pendent venue permits a court to exercise venue over other claims in which venue is improper. *D'Addario v. Geller*, 264 F.Supp.2d 367, 392 (E.D. Va. 2003). A court may hear a claim for which venue is improper, when it arises out of a nucleus of operative fact common to a proper one, and when factors such as judicial economy, convenience, and the interest in avoiding piecemeal litigation counsel in favor of the hearing the claim. *Lengacher v. Reno*, 75 F.Supp.2d 515, 518 (E.D. Va. 1999). *See C.H. James & Co., Inc. v. Fed. Food Marketers, Co.*, 927 F.Supp. 187, 189-90 (S.D. W.Va. 1996) (applying pendent venue to a complaint asserting only state-law claims).

8

B. *Analysis*

The Court begins by noting that venue is proper in this district over Count II, because the Lease Agreement's forum selection clause permits the parties to litigate related claims here. If Counts IV and V arise outside the scope of the Lease Agreement, then venue would be proper over those counts, because a substantial part of Jones's acts in incurring business expenses occurred in this district. *See* 28 U.S.C. § 1391(a). Venue over Count III is required in the Western District of Missouri, since the forum selection clause in the Consulting Agreement requires the parties to submit "to the exclusive . . . venue" of a court in that district. (Am. Compl. Ex. 2 ¶ 19.) The questions for the Court are whether to split this action and, if it decides not to, whether to hear the entire action or transfer it to the Western District of Missouri.

First, in the interest of justice, the Court will not enforce both forum selection clauses and divide this action. Enforcing both forum selection clauses would be wasteful and inefficient. The plaintiffs' claims arise out of the same set of facts. Both agreements plainly represent constituent parts of a single transaction, and much the same evidence will be required for the plaintiffs to make the requisite showings under each count. For example, Jones and CTE President Ross are both likely to offer testimony on the events surrounding both contracts. CTE's former Ashland employees may testify to Jones's activities as CTE consultant and office manager. Receipts and documents relating to the Lease and Consulting Agreements are likely to be bundled together. Therefore, enforcing both clauses would be unreasonable under the circumstances. *See B&O Mfg*, 2007 WL 3232276 at *3.

As to the second question, in the interest of justice, the Court will transfer this case to the Western District of Missouri. *See* 28 U.S.C. § 1404(a); *JTH Tax, Inc., v. Lee*, 482 F.Supp.2d

9

731, 738 (E.D.Va. 2007). The Consulting Agreement's forum selection clause is mandatory; it excludes venue outside Missouri. *Intracomm*, 492 F.3d at 290. Jones and ACC do not claim that they entered into the Consulting Agreement, with its mandatory forum selection clause, under any circumstances but complete freedom. They fully consented to a contract that required them to litigate any claim related to that contract in Missouri. Therefore, Jones and ACC must litigate Count III in Missouri.

Of course, a plaintiff's choice of forum is entitled to substantial weight when he chooses a proper forum. *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F.Supp.2d 741, 743 (E.D.Va. 2003). Additionally, courts resist merely shifting the balance of inconvenience from the defendant to the plaintiff in deciding whether to transfer a case. *JTH Tax*, 482 F.Supp.2d at 737. Absent the Consulting Agreement's forum selection clause, therefore, it would be improper for the Court to transfer the case simply because CTE would find it more convenient to litigate in Missouri.

A valid, exclusive forum selection clause can trump a plaintiff's choice of venue, though. *See Stewart*, 487 U.S. at 29 ("The presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's analysis" under § 1404(a).). The exclusivity of the Consulting Agreement's forum selection clause is clear and, as the Court has explained, Jones and ACC have not argued that the Consulting Agreement's clause is unconscionable or the product of coercion. The proper forum for the Consulting Agreement claim, therefore, is the Western District of Missouri.

Since the parties must litigate Count III in Missouri, the interest in avoiding piecemeal litigation counsels that they should litigate any factually related claims there as well. As the

Court has explained, the alleged breaches of the Lease and Consulting Agreements arise out of a common nucleus of operative fact. The claims that CTE breached implied and oral contracts also arise out of that common nucleus, as Jones and ACC acknowledge. These claims are ripe for application of pendent venue. Therefore, the Court will transfer Counts II, IV, and V to the Western District of Missouri along with Count III. *See Lengacher*, 75 F.Supp.2d at 518-19 (explaining the practice of some courts to apply the most specific venue provision associated with any claim to pendent claims).

V. Conclusion

The Consulting Agreement requires Jones and ACC to litigate any claims arising under it in the Western District of Missouri. Furthermore, splitting the action and permitting Jones and ACC to litigate other, factually related claims in this district would be patently wasteful. Considerations of judicial economy, convenience, and the interest in avoiding piecemeal litigation dictate transferring the remaining claims as well. The Court will transfer this case to the Western District of Missouri.

Let the Clerk send a copy of this Opinion to all counsel of record.

It is SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this  24th  day of January 2011.